Thomas M. Rees v. Commissioner. Oliver B. Schmeltz v. Commissioner.
Rees v. Commissioner
Docket Nos. 3911 and 3912.
United States Tax Court
1945 Tax Ct. Memo LEXIS 101; 4 T.C.M. (CCH) 832; T.C.M. (RIA) 45274; August 13, 1945
*101 R. J. Cleary, Esq., Farmers Bank Bldg., Pittsburgh, Pa., for the petitioners. Homer F. Benson, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in income tax for the calendar year 1941 as follows: Docket No. 3911
Thomas M. Rees
$5,206.52
Docket No. 3912
Oliver B. Schmeltz
5,461.44 The Commissioner made several adjustments, but the only one which is contested in each of these cases, is the addition to the petitioner's income of $8,595.66 which was separately reported by his wife on the theory that it was her distributive share of taxable income of a partnership consisting of the petitioners and their wives. Each petitioner alleges that the Commissioner erred in including this $8,595.66 in his income. Findings of Fact The petitioners are individuals who reside in or near Pittsburgh, Pennsylvania. They filed their income tax returns for the taxable year with the collector of internal revenue for the 23rd district of Pennsylvania. Each of them has been engaged for many years in selling and servicing machine tools and some allied products in the Pittsburgh District and *102 in furnishing engineering services in connection therewith. They were, in that area, exclusive representatives of manufacturers of the products which they sold. They sold most of their goods on commission, but some items they sold as principals. They combined their separate businesses by forming a partnership on July 24, 1940, at which time each contributed $250.00 in cash. The two men did all of the selling, servicing, and engineering themselves. After the formation of the partnership, they employed an auditor who devoted a part of his time to keeping their books and records. They had offices in Pittsburgh, where for some or all of the time, they employed a secretary. There were no other employees. The petitioners at some time in 1941 discussed the question of taxes with their auditor and the attorney who represents them in this case. They decided to form a partnership with their wives. Each of them, on or about August 30, 1941, executed and delivered to his wife a written instrument to confirm a gift to the wife on that day of a one-fourth interest in the partnership. Each instrument was in part as follows: "The gift which I am today making to you is one-half of my interest in *103 the office furniture and fixtures of the partnership, the entire depreciated value of which assets is shown on the books as of this date at $159.20, $250.00 cash, and one-half of my interest in all agency contracts, unshipped orders and all other intangibles of the partnership, the gift of one-half of my interest in unshipped orders excluding, however, twenty-five per cent (25%) of any commissions which may become receivable on any of such orders which I secured, the transfer of part of my interest in all these assets being subject to any liabilities in connection therewith." Each instrument also contained a list of unshipped orders as of August 30, 1941, showing the amount and the customer's name as to each. The two petitioners and their wives entered into an agreement on August 30, 1941 which recited that the petitioners had been engaged in business as partners and had transferred by gift to their wives one-half of their interest in the business "because of the personal service nature of the business, and the need for the cooperation therein of the wives", and provided that the four parties would associate themselves as co-partners in carrying on this business, including the *104 rendering of engineering services. The partnership was to continue for an indefinite period until terminated in accordance with its terms. The instrument also recited that each of the four parties had that day "contributed an undivided 1/4 of the assets as aforesaid, subject to liabilities, of the business" to that date conducted by the petitioners as partners. The two petitioners were to receive 25% of the commissions on the unfinished orders on hand on August 30, 1941 and 25% of the gross commissions or profits of each new order was to be paid to the partner who secured the business, "it being the intent of the parties hereto in such manner to reimburse each partner for the traveling and other expenses incident to the procuring of orders and bringing in business." All other earnings after August 30, 1941 were to be divided equally among the four persons named in the instrument. The instrument recited that the capital at the beginning of the business should consist of the following: Office furniture and fixtures of the
value of
$ 159.20
Cash
1,000.00
Unshipped orders, oral and written
manufacturers' agents' contracts, and
other intangibles in the value of
None
*105 and that each of the four should own one-fourth of the amount after payment to the petitioners of 25% of any commissions receivable upon the unshipped orders. Separate accounts were kept on the books for the four persons. The net income of the business for the period from August 30, 1941 to December 31, 1941 as shown by its books was $34,372.66. One-fourth of this amount was credited on the books to the net worth account of each of the four persons. Each of the two wives, from time to time, withdrew some of the funds credited to her account. Each used some of this money for household expenses, clothing and other personal expenses. One of them used some of it to pay her hospital and doctor's expenses, and each of them used some of it to buy war bonds in joint names of herself and her husband. No inventory was shown on the books of the business. The record does not show that the firm had to pay for any merchandise before it had received payment for that merchandise from its vendee. The petitioners continued to carry on the business after August 30, 1941 in substantially the same way they had carried it on previous to that date. They did all of the selling, made all of the decisions *106 and managed the business themselves. The wives took no part in, and devoted none of their time to, conducting or managing the business. They assisted their husbands in entertaining customers occasionally, both before and after August 30, 1941. Capital was an insignificant income producing factor in the business of these petitioners. The earnings of the business were due to the personal services, abilities and activities of the two petitioners. The petitioners earned the amount, here in controversy, which was reported separately by their wives. Opinion MURDOCK, Judge: The record plainly shows that the earnings of this business are attributable directly and practically exclusively to the personal services, abilities, and activities of the two petitioners. Aside from them, there was no business. They obtained the orders and furnished the skill and ability which enabled them to earn the income. The record shows no use of capital whatsoever. The two petitioners contributed $250.00 each, together with some furniture, when they formed their first partnership in July 1940. One thousand dollars was all the cash which was on hand for the conduct of business beginning August 30, 1941. The *107 record does not show what use was made of these small amounts of cash and it does not show that any other cash was used in the business. The business was largely, if not entirely, a personal service one. The earnings of such a business are taxable to the two individuals who were responsible for them and no part of those earnings is taxable to their wives. , certiorari denied ; , aff'd. ; ; cf. , certiorari denied ; . The petitioners have argued alternatively that a portion of the profits on the unfilled contracts as of August 30, 1941 was taxable to the wives and not to the petitioners because the wives on August 30, 1941 acquired an interest in those unfilled contracts. The petitioners, throughout the proceeding, have insisted that those contracts had no value on August 30, 1941. We do not decide whether or not they had any value at that time. It is clear from this record *108 that whatever earnings were derived from those contracts were earned by the activities of the two petitioners and were in no way due to the activities of the wives or to mere ownership by the wives. Federal income tax law does not permit an individual to escape the tax by assigning income which he has already earned or which he expects to earn from his personal endeavors. . All of the income of this business for the period here in question is taxable to the two petitioners. The petitioners cannot escape tax on their personal earnings even if, as they have argued, they made valid gifts to and formed a legal partnership with their wives under the laws of Pennsylvania. They have tried to prove some business purpose for bringing the wives into the business but the record shows no more than a desire to reduce the family income taxes. They have also offered some evidence to prove that the wives separately controlled and enjoyed one-fourth of the income of the business. This evidence is not particularly impressive. Some of the money was used by the wives to buy bonds in the joint names of husband and wife, some was used to pay income tax, and *109 some to pay family expenses which the husband would otherwise have had to pay. Furthermore, if we are right in holding that the income was earned by the personal efforts of the husbands, it makes no difference whether or not they allowed their wives to spend all or some part of it. Decisions will be entered for the respondent.